Good morning. May it please the Court, Paul Quaid on behalf of Appellants Simon Cheffins and Greg Jones. I would like to reserve three minutes for rebuttal. Just watch the clock, yes. Thank you, Your Honor. The incident litigation implicates important policy considerations regarding the protection of artists' creations under the Visual Artist Rights Act of 1990. Regrettably, in the lower court, this case and the trial was turned into an issue over an old school bus. One of the materials that was obviously used in the creation of Locke and Tessa, and whether or not that vehicle was abandoned by the artists. But isn't there a threshold issue under the V.A.R.A.? And that is, is this applied art or not? Absolutely. And that's where the trial court erred in the primary issue related to the... And what was the error? The error was that the trial court found it to be applied art, the application of art to a utilitarian object. However, the problem here is that the finished product, Locke and Tessa, was no longer a utilitarian object to be used on a daily basis. It was used to transport people around Burning Man. And that was a minor component of the actual art piece itself. And where the trial court relied on finding that it, because it transported people, it retained its use as a utilitarian object. Let me ask first, do you have any objection to the legal standard that the trial court used, as opposed to the application of the standard? No. I believe it's the application of the standard as to what is and is not applied art. That is really the question here and where the court erred in not distinguishing the art piece itself from a component of the art piece. Well, so you agree that whatever this thing, so as to be meekly, this thing has utilitarian purpose? No. It doesn't have any utilitarian purpose? No. It is a whimsical art piece that... Well, it transports people. That would be, it doesn't, it's not taking people from point A to point B as a school bus would, where it picks up the students at point A, takes them to school. In the setting of Burning Man and in the presentation of the art piece, the transportation was a mere component of the entire art that was created. A new art form, if you will, mobile, interactive art form that is on, was at the time of its creation in 2002 on the cutting edge. In fact, it's grown into an art form that adorns the streets of San Francisco. These kinetic art pieces, these interactive art pieces that may have a certain element of utilitarian nature, but that's not the nature of the art piece itself. So is a float at the Rose Bowl Parade a work of applied art? That is a more difficult question because it's, I guess, if you're looking at it from the perspective of its transporting participants in the parade from point A to point B, it could be considered applied art. But I would argue under the Visual Artist Rights Act that it would not be applied art. It's part of the whimsy. It's part of the creation itself that is what defines art, the fantasy that it creates and the fact that it moves and you can participate and be part of that art form is something new and amazing in the art world. So you're saying it's like an art installation but a mobile art installation? Absolutely. And this Court, I'm sure, has seen those art installations coming from Burning Man on the Embarcadero and other locations that 10 years ago we would have never imagined to see those art installations where people can actually interact with them and be part of them. It's become an international phenomenon of these type of art installations that are more than just going to the state museum and looking at the picture. So the fact is that people can get in this object bus and go places, right? Yes. So that's why I'm saying it does have a utilitarian application. No. And why not? Because you can enter an art piece, because an art piece moves, does not revert it back to a utilitarian purpose of transporting people from point A to point B. It could have some other utilitarian purpose. Why do you focus that it must transport from A to B to be utilitarian? Well, that's what the point of a bus is. That's a school bus, right? It takes people from point A to point B. There's no creativity involved in a school bus. Let's assume, for example, that La Contessa was used as a school bus. It certainly could have been. It could have transported students around, right? But let's assume hypothetically. Does that change, then, the nature of the art? If it were to take students, and it did take children on a treasure hunt. Yeah, exactly. But that's part of the whimsy of it. No, and let's say that we think this is really fun. We're going to use, instead of our usual school bus, we're going to use La Contessa to pick up kids going to school. Well, and that's an interesting distinction, and one that this Court dealt with just recently under the Fabrica line of cases, which is slightly different in application. But in Hale v. Starbuzz, this Court in July made a determination of whether or not the utilitarian purpose could be removed from the artistic form. And in this case, the artistic form overwhelmed the utilitarian purpose of transporting people. So even if you were to say if you used a progressive school district, say here in this city, decided we're going to use this as a school bus and move it along, does that mean it's applied art? Yes, that's my question. And my ‑‑ I would submit that that is an issue that the court, trial court, improperly decided related to and denied its artistic merit. So now are you saying that it's a legal question in application, or are you saying it's a factual question? Well, in Hale v. Starbuzz, this Court found that it was a mixed question of law and fact. And, of course, this Court reviews this determination de novo. Whether or not the jury should be left to decide this mixed issue of law and fact is something for this Court to make a determination of. But the ‑‑ But what if the bus didn't ‑‑ wasn't actually moving, but instead it was used as a venue? And that's an interesting issue, because in certain aspects, it was being used in its static condition to create the feeling of being on the ocean. A venue, a stage prop, it was not. And that you have to look at the totality of the experience that the art piece created and the intensity of feeling that it created and why it was a piece that was internationally recognized, why it appeared in Rolling Stone. Sets don't ‑‑ stage sets, theater sets, even concert sets don't appear in depictions of Rolling Stone or Stern or other international magazines. They're not on the Discovery Channel. This piece was. Well, that, you know, there's a lot of these pirate ships, for example, that have been used in the movies. They appear on all kinds of channels. I can't see whether you're in Rolling Stone would actually be a very good dividing line for deciding if something were applied art. Well, the issue is, is whether or not it ‑‑ whether it's art. And that's a question. We know it when we see it. And that's where I would ask this court to go in finding that this, in fact, was art, not a stage, not a utilitarian object, because of the feelings, the response that it created, the creations, the flattery by reproducing La Contessa in later years and other kinetic mobile art forms. Counsel, I assume, since we've conducted this discussion, that you agree that the applied art definition is the one we take from the Carter case in the Second Circuit? Yes. And I ‑‑ Because it's not separately identified in the statute, as I understand it. That is correct. And applied art as not being defined, this court has to adopt a standard as to what that actually means. And I would ask this court to consider those items that were excluded under VARA, their commercial purposes, if you will, and read those exclusions as a whole in looking at what the definition of applied art should be. And when you look at that, that's when the artist commissions the work or is hired to create the banner, like in Polaria, where they basically put some artistic creativity on a commercial banner or an item that's to be used for another purpose, as opposed to creating an art piece that turns into fine art because of its very nature. You're telling us to look at Section A, little i. Any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture, et cetera? Exactly. Commercial purposes. If you look at the overarching coverage of VARA and what it was intended to protect and the example that was utilized by Congress in adopting VARA, the artist who produced these sculptures for the 1964 World's Fair, whose art was bought by the very producers of the World's Fair and then turned into scrap metal. And that's why VARA was passed, to protect these creations from their destruction because of the perspective of the person that's destroying or acquiring that art piece, as is the case here. Counsel, you're down to less than three minutes. It's your choice. I will hold off and save it for about 30. Very well. Good morning, Your Honors. Keegan Lowe, appearing for the appellee. Michael Stewart. Would you mind pulling your microphone a little closer? Very good. Thank you. Your Honor, Locke and Tessa, like some people, simply can't avoid its humble origins. It was a school bus that transported people, and it was adorned to look like a Spanish galleon. But contrary to what we heard today, the mobility of this art piece was key to its existence. It was made to be on the playa at Burning Man because of the flat surface. It had a very short draft at the bottom or draw. The attempt by the appellants in this case is to elevate the stature of this art car into fine art. And the fallacy of that argument is they seem to think that if it's fine art and it's recognized and it has a lot of accolades, that it then cannot be applied art. And that's the problem here. The jury trial in this case was two weeks of showing how much work went into building this galleon, which nobody disputed. But you can't get away from the original basis for this project. And in your analogy, you're – You're saying that the original basis is the bus? Yes, Your Honor. Okay. But leave aside their argument because there's a lot of bad fine art, so you don't have to be popular to be fine art. But just because you take the utilitarian object and incorporate it as part of art doesn't somehow mean that it's always going to be applied art, does it? Well, there are some close questions. If you had a scenario where you no longer utilize the functioning part of it, in this case the school bus, as a school bus, if it was just driven out and planted in the desert, now I think that might be a closer question. Okay. So I take – this is a utilitarian object, right? The glass? Right. Okay. So I take it now and I paint it, and then I put some interesting little things inside, plastic, loose ice cubes, and then I set it on a shelf. I could drink out of it still, but it's actually art. How do I know if it's applied art or not applied art? Well, it retains its function as a drinking glass, just as a school bus retained its function to transport people. So your dividing line was that if there's any functionality retained, it becomes applied art? Well, yes, but also more specifically, if the functionality is key to the art project itself, and in this case I don't think there's any doubt that this was a key component of the Spanish galleon ship. What do you mean key? The fact that it moved or the fact that it was a bus? The fact that it moved was the element of this art piece, and again, understanding Burning Man, it's a big, expansive, flat ground, and so these art cars and lock and tests are very popular up there. Well, moved, and do I understand transported people as well? Oh, yes. It had a bus driver who was at the front of the ship who drove it around the playa. Counsel, the term is not separately defined in the statute. We've been looking at the Carter case. Help us with the definition. Where do we go for the definition? Your Honor, I think that the definition is best, as I've seen, is in the Carter v. Helmsley Spear case, and I can't quote it right now, but essentially what it is is adornment of a utilitarian object, and they give a great example, I think, of if you paint a chair and hang it on the wall as a painting, that can obtain the protection of VARA, but if you paint a chair, just paint a chair and sit it on the side of the room, that is not covered by VARA. That was an example. Well, that's the colloquy with Judge McKeown with the glass of the chair. Right. And, well, I mean, I think that that's the purpose, and in the Pallara v. Seymour case, the reasoning behind this is that VARA was enacted as a very limited statute, and it was not meant to cover a wide variety of art objects, which is why the exclusions are as extensive as they were. Well, now, what about Mr. Quaid's argument just made that you have to look at the context of the statute? And I read some of the context, poster, map, globe, chart, so forth. He suggests that tells us it has to have a commercial purpose. Does this have a commercial purpose? It does. Well, there were some claims that it was going to at some point generate revenue as an attraction, but I would submit that for the purposes of its tenure at Burning Man, it didn't have a commercial purpose that I was aware of. But I don't think that you'll find any authority that says that the VARA protections are only or do not exist only for commercial projects. And what about cannons of construction? Do they help us in any way here? Well, I don't know where you're going with that, Your Honor, but I'm just testing the water. Okay. I'm just trying to find out how to deal with this, since we don't have a statutory definition and all we have is a Second Circuit case, and I don't know where they pulled it out of the air. Well, that's true, Your Honor. I mean, it's clear that there's a paucity of authority in this area, but the authority that is there, the two cases that we have in the briefs, I think make clear that if it's utilitarian and it doesn't lose that utilitarian purpose, the protections of VARA do not apply because it is, in fact, applied art. I would note for the record that counsel mentioned a couple of times a case that apparently was recent. I don't think it's in the briefs. I'm unfamiliar with the case, Starbuzz case. And one last point I'd like to make, Your Honors, is think this through. If VARA protection was given to La Contessa, then it likely would be sought for any owner of any art car in the United States, and there's a lot of them, because they're all going to say this art car is fine art and it deserves the protection of VARA. So the next time that car, which art cars for the most part are driven on the street, they're legal to drive. The next time that car gets in an accident, instead of a state court negligence claim, you're going to have potentially a Federal component to simple negligence  And I think that's the case. And that seems like crying foul for a remote possibility. I mean, there's a real difference between an art car that's driven around on the streets and at least what's alleged here, which is a mobile art installation, which is not typically driven on the streets. I don't see that your analogy would hold. Well, I think I don't see the difference if I own an art car, as opposed to if you want to call La Contessa something else. What is the difference? Well, they say that it's not an art car, as you, I think, are using the term, but that it's basically an art installation. It's a creative art installation that's over a bus. So, then the question comes up, is that really something that, is there enough factual issue here that the jury should have at least been instructed on functionality and let them decide? Since you brought up that point, I don't know if this is a question that you have, but Judge McQuaid, the magistrate judge in Reno, he found that he could decide, as a matter of law, whether something was or was not applied art. And he cited to some other cases in his decision that seemed to also have, as a matter of law, the judge determining whether this was applied art or not. So, he couldn't define it, but he knew it when he saw it. Well, perhaps. Perhaps. Your Honors, unless you have further questions, I'll submit at this time. Thank you, counsel. Mr. Quaid, you have some reserve time. Thank you. Just briefly, in going to the issue and the argument raised in this matter related to the art car, it's a far cry from a negligence claim of an artist who voluntarily puts his art on the public roadways and is involved in an accident. From the facts of this case, where an individual, a Pele, Michael Stewart, willfully destroyed a piece of art without making any attempt to contact the artist or to preserve the art piece. In fact, in looking at VARA, under 17 U.S.C. 13, I believe it's D, if the art is in a building, the building owners must contact the artist or give them notice that it's going to be removed or destroyed, going back to the Carter-Hemsley case, and whether or not those deserve the protections of VARA. And in that setting, the building owner must take steps to notify the artist of their intent to remove and or destroy or appropriate the artist's work, even in the context of paying that artist to make that installation in the hallways and on the elevators of that utilitarian object, the building. So if looking at it in that light, even applied art in a building setting, a utilitarian object, enjoys the protection of VARA because of the distinguishing factor of the utilitarian object itself and the art piece itself. That's why I would respectfully ask this court, and it makes me cringe when I hear it referred to as a bus, because no one that viewed La Contessa would have thought it was a bus. No one. Not one single person that actually went out there and saw it or participated in that art piece would have said it was a bus. I'd also like to point out, actually, Stuart's own expert, Gary Carson, his testimony. Would you consider David Best's art car as fine art? And you may have heard of David Best. He's a very famous artist here. Yes, definitely. Why? Because he's famous. That was his distinguishing factor. Not that it was applied art versus fine art, but he said in his own testimony that art car can be fine art, and we'd ask that you find that today. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown